LeRoy E. Elliott et al., Appellants, v. City of Auburn, Nebraska, a municipal corporation, et al., Appellees.

108 N. W. 2d 328

Filed March 24, 1961. No. 34883.

*Dwight Griffiths,* for appellants.

*John Ferneau, Yale C. Holland, Dale Cullen, Clarence E. Heaney, Jr.,* and *Donald F. Stanley,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, WENKE, SPENCER, and BOSLAUGH, JJ.

MESSMORE, J.

The plaintiffs, LeRoy E. Elliott and Gertie B. Elliott, brought this action in equity in the district court for Nemaha County against the City of Auburn, a municipal corporation, the mayor of the city, the members of the city council, the city clerk, and the county treasurer of Nemaha County, defendants. The purpose of the action was to have special assessments for paving improvements declared void, to enjoin collection of the special assessments, to have the levy against the plaintiffs' property stricken from the tax rolls in the county treasurer's office, and to quiet title to the plaintiffs' property against the levy and assessment for paving taxes.

All of the defendants except the county treasurer of Nemaha County demurred to the second amended petition on the grounds that the second amended petition did not state facts sufficient to constitute a cause of action; that the trial court was without jurisdiction over the subject matter of the action; and that the actions and proceedings of the mayor and city council could be reversed, vacated, or modified only by proceedings in error. The trial court sustained the defendants' demurrer and dismissed the plaintiffs' action. The plaintiffs filed a motion for new trial which was overruled. The plaintiffs perfected appeal to this court.

The plaintiffs' second amended petition, in substance, alleged that the plaintiffs, since March 31, 1958, were the owners of Lots 11 and 12, Block 8, in Courthouse addition to the city of Auburn, acquiring fee simple title thereto by warranty deed of record March .24, 1958; that the plaintiffs moved into the premises March 31, 1958; that the real estate owned by the plaintiffs was included in and constituted a part of paving district No. 27; that on or about April 7, 1958, a petition was presented to the mayor and city council requesting that body to improve the designated streets located within the limits of said city, and to create a paving district to be known as paving district No. 27; that on April 7, 1958, there were 19 or more resident owners of real estate directly abutting upon the streets petitioned to be improved, but that the petition presented to the mayor and city council was signed by not more than 11 resident owners owning property directly abutting upon the streets petitioned to be improved; that the 11 owners signing the petition did not constitute 60 percent of the resident owners as required by section 17-510, R. R. S. 1943; that the petition for the creation of paving district No. 27 was therefore insufficient to confer jurisdiction or authority upon the city or upon its mayor and city council to enact an ordinance for the creation of a paving district as required by section 17-510, R. R. S. 1943; that the plaintiff, LeRoy E. Elliott, prior to April 7, 1958, had informed the city attorney, one of the defendant councilmen of the city, and the city engineer that the plaintiffs were the resident owners of record of real estate, and had not signed the petition for the creation of the paving district, were opposed to the creation of said district, and would not sign the petition; that the petition lacked a sufficient number of signatures of the resident owners to authorize or empower the city to proceed with the creation of the proposed paving district; that on April 7, 1958, the mayor and city council wrongfully enacted ordinance No. 756 of the city of

Auburn, then made an erroneous finding that 18 resident owners owned real estate directly abutting upon the streets proposed to be improved; that the mayor and city council on February 9, 1959, did sit as a board of equalization to assess the costs of improvements made in the purported paving district No. 27 created under ordinance No. 756 and levied a special assessment of $1,285.37 against the property of the plaintiffs for the cost, assessment, and benefit of said paving; that the city clerk failed to send notices by mail to the property owners or interested parties in each of such paving districts prior to the council meeting on February 9, 1959, and consequently another meeting of the board of equalization was held on June 9, 1959, after mailing copies of the published notice of that meeting to each of the property owners and interested parties; that at the second meeting of the board of equalization there was made a reassessment and relevy, and the amount of special assessments as against the plaintiffs' property was fixed in the amount of $1,285.37; that the mayor and members of the city council, through the city clerk, caused the levy and assessment of February 9, 1959, to be certified to the office of the county treasurer of Nemaha County, and placed on the tax rolls as a tax and special assessment against the plaintiffs' property; that the certification was made on April 20, 1959, after the plaintiffs had commenced this action by filing their original petition on March 28, 1959; and that the relevy and reassessment of the meeting of the board of equalization on June 9, 1959, was certified to the office of the county treasurer June 17, 1959.

Attached to the plaintiffs' petition as an exhibit is a legal notice published in the Auburn newspaper dated April 11, 1958, showing that ordinance No. 756 creating paving district No. 27, was passed and approved by the mayor and city council April 7, 1958. This notice sets out the ordinance in full. As shown by the title, it was an ordinance finding and determining the suffi-

ciency of the petition filed in the office of the city clerk by certain property owners in said proposed paving district.

Section 1 of the ordinance stated: "The Mayor and Council of the City of Auburn, in County of Nemaha, State of Nebraska, hereby find and determine: That a petition has been presented to and filed with the City Clerk of the City of Auburn, Nebraska, petitioning for the creation of a paving district and for the paving and improving of the following described streets within the City of Auburn, Nebraska, * * * by grading, guttering, draining, curbing and paving the same; that said petition has been signed by 11 resident owners owning real estate directly abutting upon the streets to be improved; * * *."

It is agreed that the city of Auburn is a city of the second class. Likewise, it is agreed that this is a collateral attack upon the action of the city of Auburn, its mayor, and city council in creating the paving district as aforesaid.

"A general demurrer admits all allegations of fact in the pleading to which it is addressed, which are issuable, relevant, material, and well pleaded; but does not admit the pleader's conclusions of law or fact." Gerard v. Steinbock, 169 Neb. 828, 101 N. W. 2d 194.

In passing on a demurrer to a petition, the court will consider an exhibit attached thereto and made a part thereof. See Valentine Oil Co. v. Powers, 157 Neb. 71, 59 N. W. 2d 150.

In the instant case the published notice of adoption of ordinance No. 756, attached to the second amended petition as an exhibit, is to be considered in passing on the demurrer.

Section 17-509, R. R. S. 1943, provides in part: "The governing body of any city of the second class * * * shall have power to * * * pave * * * any street, streets, alley, alleys, * * * at public cost, or by levy of special assessments on the property especially benefited there-

by, proportionate to benefits, and by ordinance to create paving * * * districts * * *; Provided, that none of the improvements hereinbefore named shall be ordered except as provided in sections 17-510 to 17-512."

Section 17-510, R. R. S. 1943, provides in part: "Whenever a petition signed by sixty per cent of the resident owners, owning property directly abutting upon the street, streets, alley, alleys, * * * proposed to be improved, shall be presented and filed with the city clerk or village clerk, petitioning therefor, the governing body shall by ordinance create a paving * * * district or districts, and shall cause such work to be done * * *, and shall contract therefor, and shall levy assessments on the lots and parcels of land abutting on or adjacent to such street, streets, alley or alleys especially benefited thereby in such district in proportion to such benefits, to pay the cost of such improvement."

Section 17-511, R. R. S. 1943, provides another method, separate and distinct from that stated in section 17-510, R. R. S. 1943, relating to the same subject matter, as does section 17-512, R. R. S. 1943.

Section 17-513, R. R. S. 1943, provides in part: "The sufficiency of the protests or petitions referred to in sections 17-510 and 17-511, as to the ownership of the property, shall be determined by the record in the office of the county clerk or register of deeds at the time of the adoption of said ordinance."

Without repeating the allegations of the plaintiffs' second amended petition, the plaintiffs allege that the finding of the city council with reference to the number of property owners within paving district No. 27 was wholly false, and that the assessment made with reference to their property was illegal, fraudulent, void, without authority of law, and of no force and effect. This constitutes nothing more than an allegation of fraud in general terms, and alleges no more than that the city council erred in such matters. A mere mistake in computation, if one is made, does not constitute

fraud. It is a well-settled rule that in a charge of fraud and misrepresentation the facts showing such fraud must be pleaded, and a mere allegation of fraud is not sufficient. See Chapman v. Meyers, 84 Neb. 368, 121 N. W. 245, and cases cited therein.

In the instant case we are concerned with a collateral attack on the proceedings of the governing body of the city of Auburn, a city of the second class, and primarily with the question as to whether or not the trial court could render injunctive relief in such a proceeding.

The following sections of the statutes relating to proceedings in error are applicable in the instant case.

Section 25-1901, R. R. S. 1943, provides: "A judgment rendered, or final order made, by a county court, justice of the peace or any other tribunal, board or officer exercising judicial functions, and inferior in jurisdiction to the district court, may be reversed, vacated or modified by the district court."

Section 25-1903, R. R. S. 1943, provides in part: "The proceedings to obtain such reversal, vacation or modification shall be by petition entitled 'petition in error,' filed in a court having power to make such reversal, vacation or modification, setting forth the errors complained of, and thereupon a summons shall issue and be served, or publication made, as in the commencement of an action."

In Cacek v. Munson, 160 Neb. 187, 69 N. W. 2d 692, an action brought by resident taxpayers and members of a school board against the county superintendent and county treasurer of Gage County for a permanent injunction, this court said: "In 49 C. J. S., Judgments, § 408, p. 809, citing numerous cases including In re Estate of Ramp, 113 Neb. 3, 201 N. W. 676, In re Guardianship of Warner, 137 Neb. 25, 288 N. W. 39, and County of Douglas v. Feenan, 146 Neb. 156, 18 N. W. 2d 740, 159 A. L. R. 569, it is said: 'A collateral attack is an attempt to impeach the judgment by matters dehors the record, before a court other than the one in which it

was rendered, in an action other than that in which it was rendered; an attempt to avoid, defeat, or evade it, or deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it; * * *.' "

In Cacek v. Munson, *supra*, the petition alleged that school district No. 74, with other districts and district No. 78, filed petitions with the county superintendent praying that the boundaries should be changed so that they would be made a part of district No. 74; and that if the petitions were correct, the county superintendent would be required by statute to include school district No. 78 which would cause that district to lose its identity and require its residents to pay taxes for the support of consolidated school district No. 74. The plaintiffs' petition alleged that the petition filed with the county superintendent, purporting to be signed by 55 percent or more of the legal voters of district No. 78, did not factually represent 55 percent or more of such legal voters because one signer, although a resident of district No. 78, was not a qualified legal voter and should not have been so counted by the county superintendent, and therefore, the action of the county superintendent in including district No. 78 in the merger plan was null and void, and injunction should issue. The amended petition was dismissed, and it was held that the county superintendent had jurisdiction to hear and determine the matters about which the plaintiffs complained. The county superintendent made a determination of the subject matter. It was held that his order was reviewable only by proceedings in error, and the action requesting the injunction could not prevail. This court said that the question as to whether 55 percent or more of the legal voters of the district had signed the petition, and the findings and determination of the facts from the evidence adduced with relation thereto, were judicial in character. The opinion cited Nickel v. School Board of Axtell, 157 Neb. 813, 61 N. W. 2d 566, where-

in the court said that the power so vested in the superintendent was to a certain extent judicial in its character and subject to review on proceedings in error, and that the provisions of the statutes relating to proceedings in error afford an adequate remedy at law in such cases. This court also said that where the record of the proceedings and final order affirmatively disclose that the county superintendent had mandatory authority and jurisdiction to enter an order changing the boundaries of school districts, such order may not be collaterally attacked unless fraud is alleged, but may be reviewed by proceedings in error which provide an adequate remedy.

This court in Gergen v. The Western Union Life Ins. Co., 149 Neb. 203, 30 N. W. 2d 558, said: "This court adheres to the rule that if a court is one competent to decide whether or not the facts in any given proceeding confer jurisdiction, decides that it has jurisdiction, then its judgments entered within the scope of the subject matter over which its authority extends in proceedings following the lawful allegation of circumstances requiring the exercise of its jurisdiction, are not subject to collateral attack but conclusive against all the world unless reversed on appeal or avoided for error or fraud in a direct proceeding. Brandeen v. Lau, 113 Neb. 34, 201 N. W. 665; County of Douglas v. Feenan, 146 Neb. 156, 18 N. W. 2d 740, 159 A. L. R. 569."

The case of Hiddleson v. City of Grand Island, 115 Neb. 287, 212 N. W. 619, was a collateral attack by injunction to restrain the city from completing the paving in a certain paving district. Grand Island was a city of the first class and was proceeding under what are now sections 16-619 and 16-620, R. R. S. 1943, which provide that when a governing body shall deem it necessary to make any of the improvements named in section 16-619, said governing body shall by ordinance create paving or other improvement districts, and after the passage, approval, and publication of such ordinance,

shall publish notice of the creation of any such district. If a majority of the resident owners of the property directly abutting on the streets to be improved shall file with the city clerk within 20 days after the first publication of said notice, written objections to the creation of such district, said improvement shall not be made as provided in said ordinance, but said ordinance shall be repealed. The court said: "This required the council to exercise a judicial function in determining a question of fact, and from which error might have been prosecuted, * * *."

In Roberts v. City of Mitchell, 131 Neb. 672, 269 N. W. 515, the court said: "The section of the statutes giving power to the district court to reverse, vacate or modify the judgment or order of a 'tribunal' like a city council, is section 20-1901, Comp. St. 1929 (now section 25-1901, R. R. S. 1943). Another section of the same chapter provides for the review by the district court of a ' "petition in error," filed in a court having power to make such reversal, vacation or modification.' Comp. St. 1929, sec. 20-1903 (now section 25-1903, R. R. S. 1943).

"Whether a proceeding shall be taken by appeal from a tribunal, clothed by the legislature with power to decide in the first instance, for review by the district court, is fixed by the statute creating such tribunal and giving it its powers. The right of appeal is purely statutory. Unless the statute provides for appeal in the specific instance under examination at any time, such right does not exist. * * * In cities of the second class, the city council is the 'tribunal' * * *."

The city council was the proper party to determine in the first instance whether or not the petition presented to it was signed by the required number of property owners. The power to determine that question was judicial. Its determination of the question was made within the scope of the subject matter over which its authority extended and, the council having decided

that the facts existed which were necessary to give it jurisdiction to act, the finding is conclusive and cannot be collaterally attacked even though the finding may have been erroneous.

The second amended petition discloses that the plaintiffs had knowledge that the city council was contemplating passing an ordinance creating a paving district of which their property was a part. The plaintiff, LeRoy E. Elliott, was aware that a petition had been presented by certain of the property owners.

The plaintiffs contend that they had no notice that the ordinance would be enacted. It is true that section 17-510, R. R. S. 1943, makes no provision for notice to property owners, nor does it make a provision that the property owners may appear before the city council with reference to the subject matter contained in said section. However, there is nothing in section 17-510, R. R. S. 1943, prohibiting the right of a property owner, whose property is involved in the creation of a paving district, to appear. Considering the knowledge the plaintiffs had with reference to the subject matter, there was nothing to prevent them from appearing before the city council, had they elected to do so.

The error the city council made, if any, related to the counting of the number of abutting property owners to be within the confines of the paving district to be created. In proceedings in error the plaintiffs could have alleged that the city council had computed the property owners in the paving district to be only 18, whereas in fact there were 19, and this matter could be reviewed by proceedings in error by the district court.

The plaintiffs contend that section 17-510, R. R. S. 1943, is in violation of Article I, section 3, Article II, section 1, and Article VIII, section 6, of the Constitution of Nebraska, and in contravention of Amendment V and section 1 of Amendment XIV of the Constitution of the United States in that it delegates legislative functions to private individuals and results in the taking

of private property for a public use without just compensation and without due process of law.

The source of section 17-510, R. R. S. 1943, shows this section, in one form or another, to have been in existence as a statutory law of this state since 1879. Its constitutionality has never been questioned.

In Freeman v. City of Neligh, 155 Neb. 651, 53 N. W. 2d 67, the constitutionality of section 17-511, R. S. 1943, was questioned. This court said: "It is now elementary in this jurisdiction as well as elsewhere that an opportunity to be heard with right of review upon the question of assessments for benefits is all that is required to satisfy the due process provisions of the constitutions. Nebraska Mid-State Reclamation Dist. v. Hall County, 152 Neb. 410, 41 N. W. 2d 397. See, also, Hoopes v. City of Omaha, *supra* (99 Neb. 460, 156 N. W. 1047), citing and quoting with approval from Londoner v. City and County of Denver, 210 U. S. 373, 28 S. Ct. 708, 52 L. Ed. 1103."

Section 17-510, R. R. S. 1943, does not provide for a notice of hearing to be given the property owners within the confines of a paving district created as provided in said section to appear before the city council for the purpose of determining whether or not the improvement is beneficial or necessary, or whether the property owners included within the paving district will be benefited or injuriously affected. The following is applicable on this phase of the case.

Section 17-524, R. R. S. 1943, provides in part: "Assessments made under the provisions of sections 17-509 to 17-523 shall be made and assessed in the following manner: (1) Such assessment shall be made by the council or board of trustees at a special meeting, by a resolution fixing the valuation of such lot assessed, taking into account the benefits derived or injuries sustained in consequence of such contemplated improvements, and the amount charged against the same, which, with the vote thereon by yeas and nays, shall be spread

at length upon the minutes; and notice of the time of holding such meeting, and the purpose for which it is to be held, shall be published in some newspaper published or of general circulation in said city or village, at least four weeks before the same shall be held, or, in lieu thereof, personal service may be had upon persons owning or occupying property to be assessed; * * *."

This section of the statutes protects a complaining property owner's rights.

All of the sections of the statutes relating to the subject matter here considered must be read in pari materia.

As stated in Nebraska Mid-State Reclamation Dist. v. Hall County, 152 Neb. 410, 41 N. W. 2d 397: "In Utley v. St. Petersburg, 292 U. S. 106, 54 S. Ct. 593, 78 L. Ed. 1155, it was said: 'There is no constitutional privilege to be heard in opposition at the launching of a project which may end in an assessment. It is enough that a hearing is permitted before the imposition of the assessment as a charge upon the land * * * or in proceedings for collection afterwards."

In Hoopes v. City of Omaha, 99 Neb. 460, 156 N. W. 1047, the court, quoting from Londoner v. City and County of Denver, 210 U. S. 373, 28 S. Ct. 708, 52 L. Ed. 1103, said: " 'In the exercise of this authority the city council, in the ordinance directing the improvement to be made, adjudged, in effect, that a proper petition had been filed. (In the instant case the city council so adjudged as a question of fact.) * * * The only question for this court is whether the charter provision authorizing such a finding, without notice to the landowners, denies to them due process of law. We think it does not. The proceedings, from the beginning up to and including the passage of the ordinance authorizing the work did not include any assessment, or necessitate any assessment, although they laid the foundation for an assessment, which might or might not subsequently be made. Clearly all this might validly be done with-

out hearing to the landowners, provided a hearing upon the assessment itself is afforded.' "

We conclude that the plaintiffs' contention that section 17-510, R. R. S. 1943, is unconstitutional is without merit.

There are many assignments of error in this case. We have covered the propositions deemed necessary to a determination of the matters raised herein.

For the reasons given herein we find that the trial court did not err in sustaining the defendants' demurrer to the plaintiffs' second amended petition, and the plaintiffs had an adequate remedy by proceedings in error.

AFFIRMED.

WENKE, J., not participating.